## Martin et al. v. Weaver et al.

*John R. Jackson*, for plaintiffs.

*Walter K. Sharpe* and *John P. Sipes*, for defendants.

McPHERSON, P. J., Oct. 4, 1928.—This action was brought to determine the title to an undivided three-fourths interest in a tract of land situate in Ayr Township, Fulton County, more particularly described in "Exhibit D" in case stated.

Under the facts agreed upon, Peter Martin was seized in fee of the tract in dispute on Aug. 1, 1861, and died so seized on some date prior to Sept. 28, 1861, leaving a last will and testament, wherein he devised the tract in question, as part of a larger tract, to Maria and Elizabeth Martin, his daughters, subject to a life interest in favor of his widow, Barbara Martin.

The common source of title of the plaintiffs and the defendants in this action is Christian Martin, a son of Peter Martin, and the surviving brother of Elizabeth Martin, who, on April 17, 1875, was married to Jacob Hykes. Immediately prior to her death, Elizabeth Hykes was seized in fee of an undivided three-fourths interest in the tract of land in question, and was a tenant by the entirety with her husband, Jacob Hykes, of the other one-fourth interest in said tract.

Elizabeth Martin Hykes acquired an undivided one-half interest in the tract in dispute under the terms of her father's will, and an undivided one-fourth interest therein by operation of the intestate laws of the Commonwealth of Pennsylvania, as they affected an undivided one-half interest in said tract of land which her sister, Maria Martin, had secured through the operation of her father's will, and of which the said Maria Martin died seized in fee, subject to her mother's life estate therein, sometime prior to 1879, intestate, unmarried and without issue. Jacob Hykes and Elizabeth Martin Hykes, his wife, acquired as tenants by entireties an undivided one-

fourth interest in the tract in dispute by a conveyance thereof to them by Christian Martin and his wife, dated Aug. 30, 1879, whereby he conveyed said interest as an heir-at-law of his sister, Maria Martin, who had predeceased him. The life estate of the mother of Maria, Elizabeth and Chistian Martin in the tract in dispute expired by reason of her death in 1879, prior to Aug. 20th of that year. Elizabeth Hykes died on Aug. 12, 1909, without issue and leaving to survive her as her heir-at-law her husband, Jacob Hykes, and her brother, Christian Martin. Upon her death, title to the tract in dispute was held as follows: An undivided one-fourth interest therein was owned and held in fee by Jacob Hykes as the surviving tenant by the entirety. The life estate in the undivided three-fourths interest in said tract of land became vested in Jacob Hykes as the surviving husband of Elizabeth Hykes, the former owner in fee, as tenant by the courtesy, with remainder in fee to Christian Martin, brother and only heir-at-law of Elizabeth Hykes.

Subsequent to the death of Elizabeth Hykes, Christian Martin and his wife executed and delivered to Jacob Hykes the following:

"Know all men by these presents, that we, Christian Martin and Lydia J. Martin, his wife, of Ayr Township, Fulton Co., Pa., as well for and in consideration of the sum of two thousand four hundred and fifty dollars this day received of Jacob Hykes, also of Ayr Township, said county, as well as two hundred and sixty-three dollars previously received of him, the receipt of said several sums amounting to the sum of $2713, is hereby acknowledged before sealing and delivery hereof and for other causes specially moving, we have remised, released, quit-claimed and forever discharged, and by these presents do remise, release, quit-claim and forever discharge the said Jacob Hykes, his heirs, executors, administrators and every of them from any further payment or payments on account of any estate, right, title, interest, claim or demand that we might have in any estate that our deceased sister, Elizabeth Hykes, might have in the estate of her father, Peter Martin, dec'd, and if our said sister, Elizabeth, has any estate of her own right, for and in consideration of the premises the same is now the absolute estate of Jacob Hykes.

"In witness whereof, we have hereunto set our hands and seals this 21st day of May, A. D. 1910."

Jacob Hykes died on Feb. 10, 1927, and by his will directed his executor to sell his real estate. Under this direction, his executor sold the fee of the tract in dispute as the real estate of Jacob Hykes to the defendants.

The legal effect of the above paper upon the title to the undivided three-fourths interest in the tract in dispute is the subject of contention between the plaintiffs and defendants to this action.

1. The plaintiffs contend that this paper is not a deed and conveys no title to any real estate, and that they, as heirs of Christian Martin, own the title to the three-fourths interest in the land in dispute.

2. That it has no effect as a conveyance of the equitable title to any interest in the land in dispute, because the will of Jacob Hykes shows that Jacob Hykes, as a party to "Exhibit C," did not intend, by accepting it, to discharge the obligation on the part of Christian Martin to repay to him the sums of money which are referred to in "Exhibit C" as a consideration for its execution and delivery.

On the other hand, it is contended on the part of the defendants:

1. That the paper marked "Exhibit C" is a conveyance as a quit-claim deed of all the right, title and interest of Christian Martin and his wife in

the lands of his, Christian Martin's, sister Elizabeth, which she at the time of her death owned in her own right or had acquired from the estate of her father, Peter Martin, deceased.

2. That this general description of the land as contained in "Exhibit C" can be made certain through parol, as effective in law as a description of lands. That, as it is admitted in the case stated, Elizabeth Martin was seized in fee at the time of her death of the three-fourths interest in dispute, the description of land used in "Exhibit C" applies to this undivided three-fourths interest and the latter is conveyed by "Exhibit C."

The main question, therefore, is this: Is "Exhibit C" a deed in such form as would result in the conveyance of an interest in real estate to the grantee? One of the forms of conveyance recognized in Pennsylvania, denoted as a secondary conveyance, is that of release, which is a conveyance of an estate in lands and tenements to another who has some former estate in possession. The usual words are "remise, release and forever quit-claim," but no livery of seisen was ever necessary. A release does not require words of inheritance where made to a party in possession: Shinn v. Holmes, 25 Pa. 142; nor is it essential that it should be in technical form: Gray v. McCune, 23 Pa. 447.

In the latter case, Judge Lewis, in an opinion of the court, says: "In Pennsylvania it is not necessary that a release should be dressed up in legal and technical form. It is sufficient if it be in substance and words. The intention of the parties will be carried out in a court of law as fully as if they were before the chancellor governed by the principles of equity."

Under the above authorities, it would seem that "Exhibit C" was in form a release by the person in remainder to the life-tenant in possession, and would operate as a release if there is sufficient description of the subject-matter upon which it may operate.

It would seem very clear that the purpose intended to be accomplished by Christian Martin and Jacob Hykes by the execution of the "Exhibit C" was a definitive adjustment of their relative rights in the property left by Elizabeth Hykes, the deceased wife of one of them and a deceased sister of the other.

Under the intestate laws which determined the devolution of real and personal property of Elizabeth Hykes, Jacob Hykes was entitled to an absolute ownership of all her personal property; he was entitled to a life interest in her real estate, and Christian Martin, as her other heir-at-law, was entitled to her interest in this real estate in remainder, subject to the life estate of Jacob Hykes.

Under these conditions, the only portion of the estate of Elizabeth Hykes in which they both had relative rights was her real estate, and as such it would be the only subject-matter of adjustment as between the two. It would seem very clear, therefore, that the subject-matter upon which the paper marked "Exhibit C" was to operate was the real estate of Elizabeth Hykes. In preparing the paper, the scrivener did not describe in detail the subject-matter upon which the paper was to operate. The only words of description of the subject-matter upon which it was to operate is the word "estate" of Peter Martin and "estate" of Elizabeth Hykes. In this paper, too, the word "estate" is used not only as the subject-matter upon which it operates, but as descriptive of the type or character of interest in the subject-matter. In view of the use of the word "estate," apparently with different meanings, and to evidence the purpose of the execution and delivery of the paper, the construction and interpretation of the word "estate" is essential to the determination of the questions raised in this case.

In 21 Corpus Juris, 912, it is said that, in legal parlance, the meaning of the word "estate" is more restricted, but is not always uniform, and in many cases its precise meaning can be ascertained only from the context or the circumstances under which it is used. It should be construed in a sense which will accomplish and not defeat the purpose of the instrument in which it is used. As originally used, the term signifies the condition or circumstance in which the owner stands with regard to his property, but it has been extended to indicate the property itself. While in its primary and technical sense the word "estate" refers only to an interest in land, yet it has acquired a much wider meaning and application, being applied to all property of every description, including personal property as well as real estate, and its most extreme sense signifies everything of which riches or fortune may consist.

In Messmore v. Williamson, 189 Pa. 73, the Supreme Court says: "While in its popular use the word 'estate' includes both real and personal property, yet, when used in a strictly technical sense, it applies to realty only."

Having in mind the fact that originally the term signified the condition or circumstance in which the owner stands with regard to his property, but that it has been extended to indicate the property itself, and when so used, in its primary sense, it simply includes lands or real estate, and that the estate of Elizabeth Hykes in which all parties to the instrument were interested was the real estate, we are of the opinion that a fair paraphrase of the granting clause of "Exhibit C" would be as follows: "We do remise, release, quit-claim and forever discharge the said Jacob Hykes, his heirs, executors and administrators, and every of them, from any further payment or payments on account of any estate, right, title, interest, claim or demand that we might have in any right, title, interest, claim or demand that our deceased sister, Elizabeth Hykes, might have in the real estate of her father, Peter Martin, deceased, and if our sister Elizabeth had any real estate of her own right, for and in consideration of the premises, the same is now the absolute interest of Jacob Hykes."

Under such construction of "Exhibit C," it would operate as a quit-claim deed on the interest which the grantors had in the real estate of Elizabeth Hykes, which she had acquired from her father or which she owned in her own right at the time of her death. This is what "Exhibit C" effects in law, and was in fact intended to effect by the parties thereto, and the consideration given in money by Jacob Hykes to Christian Martin was in exchange of his interest in his deceased sister's estate, in so far as it had not passed to Jacob Hykes under the intestate laws.

Under the authority of Wharton v. Fisher, 2 S. & R. 178, and a number of more recent decisions of the Supreme Court, this general description of the subject-matter of this conveyance may be made more definite and precise by proving by parol the particular real estate of which Elizabeth Hykes died seized in her own right or as derived from her father.

Under the case stated, it is admitted that at the time of her death Elizabeth Hykes was seized in fee of an undivided three-fourths interest in the lands in dispute, which, therefore, under the above authorities, was within the general description of the subject-matter covered by the "Exhibit C," and by its execution and delivery was conveyed by Christian Martin to Jacob Hykes. Therefore, Jacob Hykes was the absolute owner in fee of the land in dispute, and never having parted with the title thereto prior to his death, it became subject to the operation of the terms of his will, and as such was within the power and authority of his executor to sell and convey in accordance with its

terms. That by the said sale and conveyance to the defendants in this action they secured the title in fee to the land in dispute.

In view of this conclusion, it is not necessary to pass upon the other contention of the plaintiff, except to say that "Exhibit C" is on its face an absolute exchange of the interest in lands by Christian Martin for the money paid him at the time of the execution and in discharge of the money theretofore loaned to him by Jacob Hykes. Any statement in the will would not invalidate the completed transaction, nor could it give life to the debt theretofore discharged. A true construction of the will would be that in distribution of his estate, Jacob Hykes meant to impose on any share devised to the heirs of Christian Martin the charge of repaying to his estate the sum paid to Christian Martin as if it were an advancement. This he had a perfect right to do, and his so doing would not be counted against him in any court of equity. Let judgment be entered in favor of the defendants.